## RICH v. BALDWIN, TUTHILL & BOLTON.

(Circuit Court of Appeals, Sixth Circuit. December 3, 1904.)

No. 1,300.

1. PATENTS—INVENTION—COMBINATION OF OLD ELEMENTS.

There is no invention in selecting and putting together the most desirable parts of different machines in the same art, making a new machine in which each part operates in the same way as it did in the old, and effects the same result.

2. SAME—INFRINGEMENT—SAW-STRETCHING MACHINES.

The Rich patent, No. 548,394, for a saw-stretching machine, discloses invention in combining with elements of different prior machines an improved mechanism for moving the rolls to change their place of bearing upon the saw, which has given the machine popularity and a wide sale; but, its validity being dependent alone on such single feature, the patent must be narrowly construed, and is not infringed by a machine in which a different mechanism is used for moving the rolls, although it accomplishes the same result.

3. SAME—IMPROVER.

If validity is given to a patent only by an improvement of a narrow character, just sufficient to cross the line which divides mechanical improvement from patentable invention, the inventor will be protected only as to such improvement as is specifically described, and is but little aided by the doctrine of "equivalents," which term has a variable meaning and is measured by the character of the invention.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

Charles C. Bulkley, for appellant.

E. A. Maher, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This suit was brought by the patentee, and after his death revived by the appellant, upon a bill which alleges the infringement by the appellees of letters patent No. 548,394, granted to the said Elisha B. Rich, October 26, 1895, for improvements in saw-stretching machines, and prays for an injunction and an accounting. The answer denies that the patentee was the original inventor of the so-called improvements; alleges that they had already been patented to one Milo Covel; that the invention had been abandoned by Rich; had been in public use for more than two years; and, further, denies infringement. At the hearing in the court below, upon the pleadings and proofs, the bill was dismissed upon the ground that there was no invention in Rich's alleged improvements.

The "invention relates," says the patentee, "to that class of machines which are employed to roll, stretch, and re-form saws which by stress and strain during use have become distorted." He states that theretofore the rolls in such machines had been mounted vertically, and in operation were lifted by power and dropped by gravity, relatively to the saw, which remained stationary, but which, as we suppose, must

¶ 1. See Patents, vol. 38, Cent. Dig. §§ 27–29.

have been moved from time to time as its different sections were operated upon; that his object was to obviate the necessity of moving the saw about, and "to provide a horizontally positioned machine adapted to positively and directly move the rolls back and forth in both directions, the saw itself remaining in a stationary position"; and that his invention "consists, in conjunction with a plurality of stretching rolls revolved by suitable mechanism and adapted to act upon the flat surface of a saw, of mechanism by which the shafts of said rolls are geared together and rotated in unison, and said rolls or roll and shaft moved back and forth relative to the saw-surface, in addition to their movement of rotation, by means of a positive connection between said rolls and the member manually operated to effect this movement." He further states that his invention includes certain details of construction, which he proposes to point out and claim.

Fig. 2 of the drawings is here reproduced:

Nos. 13 and 14 represent the rolls. The frame, 40, in which the shafts are journaled, is movable to right and left by means of the cogged pinion, 45, having a handle, 44, and operating in corresponding cogs, 42, along the base of the frame. By this movement of the frame the rolls are themselves simultaneously and correspondingly carried along on the shafts by which they are revolved, and the shafts are

simultaneously revolved by means of the gearing, 20 and 25. The upper part of the frame, with the upper roll, can be opened at the pin, 43, and turned upward on a hinge at the right to permit the saw to be put in and taken out. When closed the pin holds the upper and lower parts of the frame in proper relation at that end. The distance between the faces of the rolls is graduated by the mechanism shown in the upper part of the figure. For the purposes of this case we do not need to pursue the details of construction further. The claims involved are the first and second. They are as follows:

"(1) The combination in a saw-stretching machine, of a plurality of stretching rolls mounted upon rotated shafts, and adapted to be moved laterally relatively to a saw to be operated upon and frames within which said shafts and rolls are mounted, one of which frames is hinged to the other and adapted to be moved away from the other, together with positively and directly operating devices by which said rolls are moved positively back and forth to adjust the rolls relatively to the saw surface.

"(2) The combination in a saw-stretching machine, of a plurality of stretching rolls mounted upon rotated shafts and adapted to be moved laterally from side to side relative to a saw to be operated upon and longitudinally movable frames acting upon, or carrying, the rolls to impart to the same the movement aforesaid and a manually operated rack and pinion device between the movable frame and the point of application of the power."

The patent specially relied on in the answer as anticipating the improvements of Rich is No. 380,865, to Milo Covel, dated April 10, 1888. In taking the evidence the appellees also introduced another patent relating to the same subject, No. 259,068, granted to T. S. Wilkin, June 6, 1882. The patent to Covel shows the rolls mounted on vertical parallel shafts, and the patentee states that he adopts this position instead of the horizontal position, "as is usually the case," in order to obtain certain advantages, which he specifies. It is interesting to note that Rich, as we have said, distinguishes his invention from the earlier art by putting these parts in a horizontal position, and explains the advantages thereof; whereas Covel states that he puts his in vertical position instead of the horizontal, for the purpose of showing the advantages of that position. Turning to the Wilkin patent, we find that his saw stretcher has the shafts and rollers in a horizontal position—a prototype, in this respect, of the patent in suit. An analysis of the Covel patent shows that it has the parallel shafts and rolls, with gearing to operate them, as in the Rich patent. One of the shafts and its bearings turn on a pivot at one end, and open at the other end to receive the saw and to let it out. The rolls and shafts and the frame in which they are set are capable of being moved relatively to the saw. Means are provided for graduating the distance apart of the rolls and their pressure against the same. The means employed are the equivalents of those in the Rich patent, unless it be that in the one the apparatus is vertical, and in the other horizontal, and a certain difference in the means for moving the rolls, presently to be noticed more particularly. But if there were any special advantage in the horizontal position over the vertical, it had already been disclosed in the Wilkin patent. Besides, if the Wilkin and the Covel patents collectively contained all the features of the Rich patent,

there would be no invention in changing one of the elements of the Covel patent by bringing into it a feature of the Wilkin patent. Overweight Counterbalance El. Co. v. Henry Vogt Mach. Co., 102 Fed. 957, 961, 43 C. C. A. 80, and the cases there cited.

With respect, however, to the means for shifting the movement of the rolls from place to place, there is an advance of some consequence beyond the prior art, which we will now point out. In Covel's patent this movement was effected by suspending an inner frame, containing the shafts and rolls, by a strip of some flexible material, for instance leather, attached to the frame by one end, and having the other wound over a shaft or drum in the outer frame, turned by a handle. The shaft had fixed upon it a ratchet wheel, into the cogs of which a pawl would fall to prevent the drum from running back, and thereby letting down the rolls. Winding this up would lift the rolls relatively to the saw, and by lifting the pawl out of its place the rolls would be let down and secured again by the pawl to the changed position. We have seen that the device of Rich was to effect such movement by a cogwheel pinion operating in corresponding openings in the bottom of the frame carrying the rolls, and having a handle to turn it. Ordinarily this provision of a common method for such a purpose would hardly amount to invention, but here the proof indicates, and we think it probable, that the means employed by Rich for changing the position of the rolls in operating upon the saw has a special adaptability, in this: that while the method of Covel permits changes of only a definite and uniform distance by moving the pawl from one cog in the ratchet wheel to another, a somewhat hindering manipulation, and results in rolling the saw at fixed places, the method of Rich enables the operator to change the bearing of the rolls upon the saw to any desirable distance and to the identical place where the operation is required, and this is readily done by turning the handle of the cogged pinion one way or the other and to the extent necessary to suit the requirements. We are inclined to think that the combination of this improvement in the organization of such a machine would have the quality of invention, under the rule stated in Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 901, 53 C. C. A. 36; Star Brass Works v. General Electric Co., 111 Fed. 398, 400, 49 C. C. A. 409. We understand that the language in the first claim, "with positively and directly operating devices by which said rolls are moved positively back and forth to adjust the rolls relatively to the saw surface," refers to the means described in the specification, for a claim for all means of doing the thing mentioned would be too broad to be valid. The second claim more clearly makes those specific means a part of the combination.

But the patent stands upon this narrow ground, and the question remains whether the defendants infringe it. In order to establish the infringement of a mere improvement in a machine of former devices already in use for accomplishing a similar purpose, the means must be substantially the same, operating in the same way, and accomplishing the same result.

"If," said Mr. Justice Day, then a member of this court, in Ross-Moyer Mfg. Co. v. Randall, 104 Fed. 355, 43 C. C. A. 578, "the field

of invention is limited, and an improvement of a narrow character has been made, just sufficient to cross the line which divides mechanical improvement from patentable invention, the inventor will be allowed the specific description shown, and no more." To the same effect is Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689. It is not enough that the same result is accomplished. The need existing, it is the privilege of any other man to effect the result if he does it by different means. The defendants do not use the cogged pinion device to move the rolls, but use a bolt fixed in the frame, and having a screw and extending through a fixed bearing and having a nut thereon controllable by a handle. By turning the nut one way or the other, movement is given to the rolls. The same result is accomplished as by Rich's device, and it is urged that the means are equivalent. This is true only in a broad sense, and might, perhaps, be well said if the Rich patent was for a primary invention, or one having broad limits, as in the well-known case of Morley S. M. Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715. But, as we have said, it was not. As we have several times had occasion to say, and what is indeed well established in patent law, the term "equivalent" has a variable meaning, and is measured by the character of the invention to which it is applied. McCormick Harvesting Mach. Co. v. Aultman, Miller & Co., 69 Fed. 371, 16 C. C. A. 259; Penfield v. Chambers Bros. Co., 92 Fed. 630, 34 C. C. A. 579; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 101 Fed. 716, 41 C. C. A. 627. Different means for moving the rolls by power directly applied existed. Rich saw one of them. The defendants found another. We could not give such breadth to the Rich patent as is claimed for it without giving him a monopoly of all means capable of effecting the result which was the object of his invention. His patent does not confer so extensive a right.

The decree dismissing the bill will be affirmed, with costs.