WEŚSEL et al. v. UNITED MATTRESS MACH. CO.

(Circuit Court of Appeals, Sixth Circuit. June 15, 1905.)

No. 1,397.

1. PATENTS—INFRINGEMENT—IMPROVERS.
    It is the well-settled rule that, where two inventors improve an old machine, each is entitled to the benefit of his own improvement, so long as it differs from that of the other, and does not include his.

2. SAME—MATTRESS—STUFFING MACHINE.
    The Stephenson patent, No. 399,093, for improvements in mattress-stuffing machines, with respect to the means employed for adjusting vertically the cover of the press box and spout, in adapting them to different sizes of mattresses, must be limited to the means specified, or its equivalent, and cannot be broadly construed to cover any means for accomplishing the same result. As so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

A. L. Jackson, for appellants.
Russell Wiles, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and WANTY, District Judge.

SEVERENS, Circuit Judge. This is a suit in equity brought by the appellee, wherein it complains of the infringement by appellants of rights secured by letters patent Nos. 376,399 and 399,093, granted to Stephenson—the former bearing date January 10, 1888, and the latter, March 5, 1889—which the appellee claims to own. Both patents relate to mattress-stuffing machines. Patent No. 376,399 was held void by the court below, and that decision is not brought up by this appeal. Claims 1, 3, and 7 of No. 399,093 were held valid, and an interlocutory decree was entered in favor of the appellee for profits and damages, and for an injunction. The defendants below have appealed from that decree. Wessel alone was made defendant by the bill as filed. Woolery was let in to be joined as defendant upon his intervening petition, showing that he sold to Wessel the machine which the bill alleges to be an infringement of the appellee's patents. The defendants answered severally, but their answers are substantially alike; and they deny that Stephenson was the original inventor of the devices which are the subjects of the patents, or that they were patentable inventions; allege anticipation, and that the devices had been in prior use more than two years before application for the patents; and deny infringement.

The mattress-stuffing machine to which the patent No. 399,093 relates consists of a bed or floor laid on cross-timbers supported by posts, vertical sides to the bed, and a cover or lid; all being arranged like a box, to conform in a general way, in length, width, and depth, to the shape of the mattress to be stuffed. The lid is thrown up on a hinge at the rear end, while the stuffing is put into the box, and then brought down so as to be nearly parallel with the floor and secured. The open end of the sack or mattress cover is brought over and secured upon a spout arranged upon the forward end of the box. Thereupon a "follower," having a face about the size of the cross-section of the box, is advanced from the rear, and presses the stuffing into the sack. The mattress is filled in this way. The foregoing is an outline of the construction and operation of such machines. For greater perspicuity, we shall refer only to such details as are involved in the present controversy.

Two former patents are shown by the record exhibiting the characteristics of these machines—one, No. 125,233, described as an "improvement in mattress stuffers," granted to Watson April 2, 1872; the other, No. 376,399, also described as an "improvement," granted to Stephenson January 10, 1888. In his application for the patent now to be considered, he states that his invention is of improvements in the mechanism of machines "of the type shown in

letters patent granted to me the 10th day of January, 1888," which is the patent next before mentioned. He says:

"It is the purpose of my present invention to provide simple means whereby the dimensions of the packing-box, as well as the spout, may be readily increased or diminished, either vertically or laterally, to enable the operator to stuff mattresses of varying sizes, whereby the dimensions of the packing-box and spout shall be at all times varied in the same relative proportions."

He also states an incidental purpose, which is not material now. After describing the devices he proposes for such purpose, he states his claims, 1, 3, and 7 of which are as follows:

"(1) In a mattress-stuffing machine, the combination of a laterally expansible press-box, a vertically adjustable and laterally expansible box-cover, a spout connected with the discharge-mouth of the press-box, composed of two upper sections movable vertically and laterally adjustable, and two lower sections laterally adjustable and loosely connected with the upper sections, substantially as described."

"(3) In a mattress-stuffing machine, the combination, with a press-box expansible laterally, and a vertically adjustable box-cover, of a four-part spout located at the end of said press-box, and composed of two upper and two lower sections lapped upon each other, the two upper sections being movable vertically, and one upper and one lower section being movable laterally in unison with the laterally adjustable side of the press-box, and means for so adjusting the spout-sections, substantially as described."

"(7) In a mattress-stuffing machine, the combination, with a press-box having one side wall adjustable laterally, and a vertically movable box cover comprising removable and replaceable sections to vary its width, of a spout located at the discharge-mouth of the press-box and comprising two upper sections movable vertically and laterally adjustable, and two lower sections laterally adjustable and loosely connected with the upper sections, substantially as described."

From what has now been stated, it appears that he intended to provide means for expanding the stuffing box, and correspondingly the spout, both laterally and vertically, or to diminish them, to suit the different widths and thicknesses of the mattresses proposed to be stuffed. To provide for lateral extension of the box, he made one side movable, so that it could be set off or brought nearer the stationary side. The cover was made of slats running lengthwise of the cover, and severally removable. And he divided the spout into four parts, so that they would overlap in the bottom, top, and each side. Some of these parts were stationary, the others sliding on them. Thus the spout could be arranged to conform to the mouth of the box as the latter should be arranged. Then, to provide means for vertical adjustment, he fastened, by brackets on the posts extending upwards from the bed, mitre gears actuated by a shaft and crank with handle—the lower gear having a horizontal position—and centrally secured in it a screw descending into corresponding meshes in the rear bar of the frame of the lid. By operating the miter gears, the screw turns into or out of its meshes in the bar of the lid, and thus raises or lets down the latter as may be desired. This apparatus is duplicated at the other end of the bar. We presume the friction in the apparatus is sufficient to hold the bar of the lid stationary when the gears cease to be operated. Doubtless this is an old device in mechanics for effecting changes in the distance at which one object is brought and held in relation

to another. An instance of such a use is shown in a recent case which we had before us (Rich v. Baldwin [C. C. A.] 133 Fed. 920), where its utility in a combination for effecting a rapid and variable relation of parts was clearly demonstrated. It is, however, a matter of doubt whether in the present instance it has any peculiar adaptation to the purpose which relieves its appropriation from that process of selection which a common mechanic would make in exercising the ordinary skill of his art to accomplish such an object, if it seemed desirable. The court below, however, in its opinion, after canvassing the other features of the patent, and without finding other ground for supporting it, said:

"The vertically adjustable box-cover and spout of the complainant's second patent are not found in the Watson device, but are found and employed in the device of the defendants."

The implication is that the employment by Stephenson of the means for making the cover of the box and spout vertically adjustable in his combinations was regarded as a patentable invention. The court found, as it could hardly help doing, that the means employed by Watson, and by Stephenson in his former patent, for making the box and spout laterally adjustable, were substantially the same in their mode of construction as Stephenson had employed in his later patent. The bottom and lid of the box in Watson's patent were made adjustable laterally by dividing them lengthwise and overlapping the parts, thus permitting the parts to slide upon each other. And he made his spout adjustable laterally in the same way. In Stephenson's first patent he made his spout adjustable laterally in the same way, but made his lid in slats running lengthwise, and held in place near the fore end by a bar running across them. These slats were pivoted at the rear on a rod extending through them. By removing these slats, or inserting others, the cover was narrowed or widened, as might be desired, to suit the width of the mattress. In his later patent he uses the same cover as in his former patent, and uses the same device for making his spout vertically adjustable as Watson and himself had done for making the spout adjustable laterally; that is, he made the parts of the sides to slide upon each other, up and down, precisely as he had before made the top and bottom for the purpose of lateral expansion or contraction. It is manifest that a mechanic intent on finding means for vertical adjustment would see in the machine before him a ready way of effecting it.

For this reason, as we must think, the counsel for the appellee prudently laid stress on the novelty of the means employed in the later patent for effecting the vertical adjustment of the cover already explained, by which we mean lifting and lowering the bar in the rear of the cover to which it was hinged. Granting for the present purpose that the patent sued on may be supported upon the ground of novelty in respect to the particular means, employed for vertically adjusting the cover, and granting further that the other parts of the appellants' machine are equivalents of the other elements in the combinations claimed in the later Stephenson pat-

ent, which latter concession could not, we think, justly be made, it is impossible to hold that the machine of the appellants contains the equivalent of the new element of Stephenson's combination. Counsel for the appellee, to meet the requirements of the situation, insists that the invention of Stephenson is wholly new, and includes all means for effecting the vertical adjustment of the cover of box and spout. But this proposition is quite inadmissible. It is not given to any person to preclude all others from providing means for accomplishing any beneficial result. If the means are different —are not substantially the same—there is no infringement; there is not the use of the means contrived by the inventor; his idea is not appropriated, except the idea of the result to be accomplished, and in that there is no quality of invention. These claims, if unrestricted, are in effect, so far as this element is concerned, statements of the functions performed by the means described in the specifications.

The appellants' structure reaches a similar general result, but not by the same mechanical means. The means employed are these: The horizontal support on which the cover is hinged is made vertically adjustable by putting a vertical bracket at the end of the horizontal support, which bracket is parallel and in close contact with the side of a post rising upward from the bottom of the box which it supports. A vertical slot is made in the shank of the bracket, and a hole bored through the post. A bolt is put through the slot in the shank of the bracket and the post. By turning a nut on the end of the bolt, the post and the flange are drawn tightly together, and the position of the support of the cover is secured. The slot affords the opportunity for the vertical adjustment, and the bolt holds the parts in place. The lid and its support must be lifted, and the parts and holes brought in coaptation. Apparently this is not so good a way as Stephenson's. In Stephenson's the adjustable bar is raised or lowered by simply turning the crank. In the appellants' the bar is adjusted by hand, and held in position while it is bolted in place. There are other simple ways of doing the same thing, as by boring a series of holes in the post, and another in the flange, or vice versa, or by supporting the frame of the cover by a belt or rope running over a pulley, and wound on a shaft or drum turned by a crank and handle with a ratchet wheel and pawl, such as is shown in the case of Rich v. Baldwin (C. C. A.) 133 Fed. 920, above referred to. We may say, by the way, that much of what was said in that case is strictly applicable here. It would be a singular result if all other methods for adjusting the cover vertically were suppressed by the invention of the method of the patent in suit. It is a well-settled rule, often repeated in varying forms of expression, that where two inventors improve an old machine, each is entitled to the benefit of his own improvement, so long as it differs from that of the other, and does not include his. In the present case the improvements differ completely. Only in the result accomplished is there any similarity. The means employed by the appellants are not equivalents of those proposed by the appellee to effect the vertical adjustment of the cover, which, as a congeries,

constitutes the novel feature of the patent in suit. And as this element in the combination is essentially different in the machines of the respective parties, the combinations are not the same, and there is no infringement.

Our conclusions, shortly stated, are that it is not necessary to determine whether these claims in the patent in suit are valid or not; that, without limitation by the specification, they are too broad; that they may be thus limited and construed to intend the specific devices described, and when so limited they are not infringed by the appellants. We give no opinion upon the question whether there was such prior public use of the supposed invention as would invalidate the patent. Upon the ground before stated, we think the bill should be dismissed.

Counsel for the appellee urge that the assignment of errors does not present this ground of objection to the decree. The first assignment is that "the court erred in not dismissing the bill of complaint," and it is said it is too general. But if this be so, we think the error is plain, and that we may, in the exercise of our discretion, and ought to, notice it. This defense was distinctly raised by the answer, the issue is vital to the merits of the controversy, and the case cannot be rightly decided without adverting to it. See rule 11 of the rules of this court (31 C. C. A. cxlvii, 90 Fed. cxlvii), and Andrews v. National Foundry & Pipeworks, 77 Fed. 774, 23 C. C. A. 454, 36 L. R. A. 153; National Accident Society v. Spiro, 78 Fed. 774, 24 C. C. A. 334, where Judge Lurton, in delivering the opinion of this court, said at page 779 of 78 Fed., page 339 of 24 C. C. A.:

"If this assignment had been in compliance with the plain rule of the court, we should feel constrained to reverse the judgment and remand for a new trial. So, if the error had any sound merit in it, and we could be satisfied from the whole record that a probable injustice had been done, we should be disposed, under the discretion reserved in the rule, to notice a plain and meritorious error, though not assigned."

The decree of the Circuit Court will be reversed, and the bill dismissed, with costs in both courts.