### DAVIS SEWING MACH. CO. v. NEW DEPARTURE MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. October 16, 1914. On Petition for Rehearing, December 8, 1914.)

#### No. 2,428.

1. PATENTS (§ 328\*)—VALIDITY AND INFRINGEMENT—COASTER BRAKE FOR BI-CYCLES.

The Townsend patent, No. 850,077, for a coaster brake for bicycles, covers a device the essential feature of which is a telescoping, screw-threaded connector within the hub of the rear wheel, movable to the right and left and revolvable both with and upon the driver sleeve, and which, when the pedal is driven forward, moves to the right and clutches the hub, and, when driven backward, moves to the left, releases the hub, and clutches the brake mechanism. In such feature it was not anticipated in the prior art, and, while not strictly a pioneer, the invention was the step which resulted in making practical and commercial the combination in one device of the driving, coasting, and braking functions, and the patent is entitled to a fairly liberal application of the rule of equivalents; its claims being not too broad to cover and protect the real invention. Also *held* infringed.

2. PATENTS (§ 101\*) — VALIDITY — ELEMENTS DESCRIBED GENERALLY AS "MEANS" OR "MECHANISM."

A claim of a patent is not functional and invalid merely because one of its specified elements is "means" or "mechanism"; but such result may or may not follow, depending upon whether such all-inclusive term is used with reference to the element or subcombination which is the real point and gist of the invention, or to elements or parts already well known and designed to co-operate with the new element in order to make a completely operative unit.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 141; Dec. Dig. § 101.\*

For other definitions, see Words and Phrases, First Series, Mechanism; also, First and Second Series, Means.]

3. PATENTS (§ 101\*)—CONSTRUCTION—COMPARISON OF SPECIFIC AND GENERAL CLAIMS.

In determining whether the ambiguous terms of a claim should be confined more or less closely to the form shown in the drawings, it is usually well to compare with other claims which may not be in suit; and if other claims are found which call for the specific construction of a part mentioned more generally in the claims in suit that will be persuasive for not giving the limited construction to the general terms.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 141; Dec. Dig. § 101.\*]

4. WORDS AND PHRASES—"BRAKE"—"BRAKE PAIR"—"BRAKE SHOE"—"BRAKE DRUM."

An effective "brake" consists of two members, which are called the "brake pair," consisting of the "brake shoe," which is the movable member, and the "brake drum," or the stationary member.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Brake.]

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by the New Departure Manufacturing Company against the Davis Sewing Machine Company. Decree for complainant, and defendant appeals. Affirmed.

The New Departure Company brought suit against the Davis Company for infringement of claims 25–30, and claim 19, of patent No. 850,077, issued April 9, 1907, to Townsend, for a coaster brake for bicycles. There was the usual interlocutory decree for plaintiff, and defendant appeals. The parties will be named here as below. Their respective structures are shown in the following cuts, and claims 19 and 26 are given in the margin.[1] The other claims in suit are similar to 26.

TOWNSEND'S COASTER BRAKE.

---

[1] Claim 19.—In a bicycle, the combination with a wheel hub and axle, of a brake mechanism, a driver for the hub and brake mechanism, a rotatable sleeve connected with the driver and mounted upon the axle within the hub, a laterally shiftable, rotatable sleeve mounted upon the sleeve of the driver and having tapered portions, a complementary spiral connection between said sleeves, and tapered clutch elements carried by the hub and brake mechanism with which the tapered portions of the shiftable sleeve may engage, substantially as described.

Claim 26.—A driving, coasting and braking mechanism for vehicles, comprising the combination with a wheel, a brake therefor, and a driver with relation to which said wheel can independently rotate, of a brake-anchoring device anchored to a relatively stationary structural element of the vehicle, a laterally shiftable connector which in one position operatively connects said driver with said wheel for driving the latter and in another position permits said driver to apply said brake, said connector having rotary movement with respect to said driver and said wheel being rotatable with respect to said connector, and threaded operating connection between said driver and said connector, substantially as described.

APPELLANT'S COASTER BRAKE.

Prior to the Townsend patent, hub brakes, by which back pedaling produced a braking contact inside the hub, were common. Devices also had been made permitting the pedal and the hub-driving clutches to be disengaged, so that the rider could coast down hill with his feet stationary on the pedals. Townsend was not even the first to conceive the abstract desirability of providing mechanism by which the rider could, at his pleasure, drive the wheel forward by his pedaling, or make the pedals stationary while he coasted, or apply the brake by back pressure on the pedals; but he was the first to embody this idea in practical, efficient, commercial form. The operation of his device will be clear, from a brief description of the cut. *B* is the rear-wheel axle of a bicycle, fixed at each end in the frame (not shown) and held against revolution. At one end it has, rigidly attached, the disc, *I*, which carries the expansible split ring, *K*, intended to operate as a brake shoe. At the other end the axle carries the revolving sprocket wheel, $C^1$, driven by a sprocket chain from the pedal shaft; and extending inwardly from, and rigidly connected to, this sprocket wheel, is the sleeve, *C*, whereby this sleeve revolves with the sprocket freely around the axle in either direction. All the parts intermediate the sprocket and the disc at the other end are included within the revoluble hub, *A*. Obviously, a driving revolution imparted to the hub will impel the wheel, friction being minimized by suitable ball bearings, as shown. At the inner end the hub shell is extended and enlarged as shown, so that its interior surface forms a brake drum against which the split ring, *K*, may be expansibly forced into braking contact. Neither the sprocket and its attached sleeve, which form the driving mechanism, nor the parts at the other end, which make the braking mechanism, are permanently connected with the hub; and therefore, in what may be called the normal and is the coasting position of the parts, the hub and wheel freely revolve without much frictional contact with either driving or braking mechanism. The operative contact, necessary for these functions, is accomplished by and through a sleeve, *D*, which, for convenience, may be called the connector. It surrounds, and, except as limited by other parts, may be revolved upon, the driver sleeve, *C;* but interposed between the two is a thread and screw connection, so that, if the connector is held against rotating while the driver sleeve revolves, the connector necessarily moves longitudinally upon the driver sleeve one way or the other, according as the rotation is forward or back. As constructed, when the driver sprocket and the wheel are driven forward, the connector is moved to the right; upon a back pedal pressure, the connector moves to the left. The right-hand end of the connector is given an exterior taper, and the adjacent part of the hub a corresponding interior taper; so, as the connector

moves to the right, these two parts constitute a friction clutch, which, as the forward pressure is maintained, lock together the driver sleeve, the connector and the hub, and the wheel is driven forward. The greater the driving pressure, the more perfect the clutch. When the motion of the sprocket is reversed by back pressure, the connector is at once carried to the left, and, after slight travel in this direction, its tapered left-hand end becomes one member of the friction clutch, the other member of which is attached to a rocking sleeve surrounding the axle. When this rocking sleeve is so locked by this friction clutch to the connector, it makes part of a revolution until a lever which it carries comes in contact with the split ring, $K$, expanding this against the brake drum carried by the hub, and so completing the brake action. Obviously, the greater the backward pressure applied to the sprocket, the greater the braking pressure applied to the brake drum. Obviously, too, when there is pressure in neither direction upon the sprocket, the hub is disconnected from driver and from brake. To insure that the connector shall not rotate with the driver sleeve until it has nearly or quite reached its clutching position at one or the other end of its travel, Townsend provides a lag spring, marked $M$; but its detailed operation need not be described.

Edward Rector, Frank Parker Davis, and Russell Wiles, all of Chicago, Ill., for appellant.

G. P. Moore, of Bristol, Conn., and Melville Church, of Washington, D. C., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges

DENISON, Circuit Judge. [1] As in every patent case, the court must select that method of approach to the crucial questions which seems to furnish the simplest and clearest solution; and, in the present case, it seems to us best to inquire: First, what were the scope and extent of Townsend's real invention, as shown by comparison with the state of the art? Second, does the defendant employ this invention? And, if so, then, third, do the terms of the patent grant fairly permit a construction which will cover the form of the invention so appropriated by defendant?

We are satisfied that the substance of Townsend's invention, its real inventive novelty, its meritorious forward step, are found in his creation of this connector, movable to the right and left inside the hub, clutching the hub at one end of its travel, at the other end of such motion clutching the brake mechanism, and, in its intermediate position, clutching neither. Whether its telescoping form with reference to the driving member and its thread and screw connection therewith were included in the foundation of his invention, or were only selected and nonessential forms, may be important in some future controversy. In this case it appears that defendant uses these more specific features, and so we hereafter assume, for the purposes of this case, that these two things are essential characteristics of the invention.[2] The peculiar means by which this shiftable connector at one time firmly unites the hub to the driving sprocket, and at another time firmly joins the brake to the driving sprocket, constitute only the environment of Townsend's invention. These things were neces-

2 Some of the claims do not specify "telescoping" or "screw-threaded," but say that the connector has "rotary movement" upon the driver. This is the same thing, so far as now involved.

sary, in order to give the invention its operative field; but they were not, of themselves, of the body or essence of his primary inventive thought.

The prior art shows various forms of driving connections between the sprocket and the hub, released by back pedaling, and various forms of brakes so constructed that the two members of the braking pair were forced into contact by back pedaling pressure; but nowhere do we find any construction that fairly discloses this shiftable connector, screw-threaded upon the driver sleeve, revolvable both with and upon that sleeve, and clutching one mechanism, or the other, or neither, as it moves back and forth. We do not overlook the patent to Carver, No. 160,570, March 9, 1875, for a friction pulley. This contains the germ of the idea; but its modification and adaptation from the friction pulleys of a factory to the hub of a bicycle we think is, clearly enough, invention.

The Brewster patent, No. 713,594, November 18, 1902, and the connected testimony regarding early use, even if they established a sufficiently early date, would not demonstrate any lack of patentable novelty in Townsend's connector as we have described it. Brewster undertook to accomplish his objects by a loosely mounted sprocket having wedge-shaped cams on its vertical surface, which, upon reverse motion, would constitute a friction clutch with a loosely mounted disc having corresponding wedge-shaped cams, and would force this disc laterally into braking contact with a hub surface. The practical efficiency of this device is, at best, left doubtful by the testimony; and the Brewster patent and device chiefly serve to emphasize the thought that Townsend's invention was not in the driving clutch or in the braking mechanism, but was in the telescoping, screw-threaded connector sleeve, clutching, at the pleasure of the rider, the driving mechanism, or the braking mechanism, or neither.

The patent to Priest & Priest, No. 623,825, of April 25, 1899, might or might not need more careful consideration, if it was early enough; but there is nothing tending to carry it back of its date of filing, September 28, 1898, while Townsend's original application, though filed October 10, 1898, was executed September 19, 1898, and the proof is clear enough that Townsend's invention was perfected and in use in the summer of 1898. The Priest & Priest patent, therefore, needs no attention.

From our review of the prior art and the alleged anticipations or limitations, we are satisfied that Townsend's invention is essentially measured by this shiftable sleeve connector in this surrounding and application, and that his invention, while not rightly to be called pioneer, was the step which resulted in making practical and commercial the combination in one device of the driving, coasting and braking functions, and that his invention is entitled to a fairly liberal application of the rule of equivalents.

If this connector is the characterizing feature of Townsend's improvement, it is hardly to be doubted the defendant uses the invention. Referring again to the cuts, it will be seen that defendant has the Townsend sprocket, driver sleeve, shiftable connector, and threaded

engagement between the two latter, almost precisely like Townsend. Indeed, no difference is said to exist, save in the means of clutching the brake mechanism and in the braking mechanism itself. The extent of these differences and what effect they have on the question of infringement must be reserved to consider in connection with the true meaning of the claim. It is enough to say at present that the shiftable connector sleeve, with the characteristic functions which have been described, and which we have found constituted the real and substantial advance which Townsend had made in the art, has been appropriated and is being used by defendant without material change of form.

Having thus found what Townsend invented, and that it has been taken by defendant, we come to the inquiry whether, through indifference or otherwise, the patent grant was so limited that it does not give to Townsend a monopoly of his real invention; and this requires that we first observe the departures which the defendant has made in its brake clutch and brake mechanism.

[4] An effective brake consists of two members, which may be called a brake pair, and which we have spoken of as the brake shoe and the brake drum. This terminology implies that the relatively movable member be called the shoe and the stationary one the drum. It cannot make any particular difference which member revolves. In a bicycle structure, the axle is fixed, the hub is revolving, and the two parts of the brake pair are essentially the axle member and the hub member. The drum, as above defined, may be attached to the axle or to the hub. The relatively movable shoe may be pressed, radially, from the axle against the drum on the hub, or from the hub against the drum on the axle. Both forms were common. So, also, before Townsend's invention, brake drums had taken two forms: A cylindrical surface, against which an expanding or contracting ring was radially forced, and a tapered or conical surface, longitudinal of the axle, against which a corresponding tapered or conical hub surface was longitudinally forced. Townsend, like all others, could use any of these forms. He selected and illustrated the cylindrical and expanding ring form of brake that has been described. The defendant selected the conical form. It attached firmly to the axle (and anchored to the frame) the tapered nut, *10*, and this became the relatively stationary member of the brake pair, or, as we have called it, the brake drum. Defendant then provided, within the hub, a sleeve which he splined to the interior surface of the hub, so that it must revolve therewith, but was longitudinally slidable therein. This sleeve is shown in the cut by the numeral *6*. It was tapered at both ends corresponding to the tapers in the adjacent surfaces of the connector and the brake drum. When the driver sleeve receives back pressure and the connector is driven to the left, it makes contact with this sleeve, *6*, and pushes the same along until the taper at the other end of the sleeve contacts with the brake drum. Then, as the lateral motion continues, it may be assumed that the connector and the right half of the sleeve, *6*, lock together with an efficient friction clutch, in which case the left half of the sleeve obviously becomes the shoe member of the brake

pair, and the braking effect is obtained.  Defendant also provides complementary teeth, which make a positive lock between the connector and the brake drum when the connector reaches the extreme left-hand position; but the office of these interlocking teeth is wholly supplementary to the functions of Townsend's patent.  They serve to maintain the braking effect after it is once established, and so lessen the muscular effort otherwise required in maintaining the back pedal pressure.  They cut no figure on the question of infringement.

Defendant says that by the double taper of its interior hub sleeve it gets a double braking effect, part at each end.  This may be true, but it is immaterial.  If defendant uses the Townsend shiftable connector, at one point clutching the hub for driving, and at another point clutching the part which actuates the brake shoe, it is immaterial that it gets a supplementary braking effect somewhere else.  Indeed, the difference between a friction clutch and a brake, in this situation, cannot be determined.  Until the two members of the pair are so set that relative motion ceases, they constitute, mechanically, a brake, no matter if they have been called a clutch.  When they are so set, they constitute a clutch, no matter if they have been called a brake.

Returning, now, to the terms of the claims, and selecting No. 19, we find that it clearly reads upon defendant's structure.  Only two suggestions to the contrary are made.  It is first said that, while the hub carries a tapered clutch element with which the right-hand end of the connector (shiftable sleeve) may engage, the brake mechanism carries no tapered clutch element with which the left-hand end of the connector may engage, but that the tapered clutch element with which the left-hand end of the connector engages is carried by the hub and not by the brake mechanism.  It is not clear that there would be a material departure from the claim if a specified element was carried by one instead of by the other of two named co-operating parts; but however that might be, and giving defendant the benefit of this argument, it still is true that the left-hand end of this hub sleeve, 6, is the brake shoe, one member of the brake pair, and, therefore, a part of the brake mechanism; and so it is literally correct to say that the right-hand end of this hub sleeve is a taper clutch element, with which the connector may engage, and which is itself integral with, and is therefore carried by, part of the brake mechanism.

The other suggestion is that unless the call of the claim be restricted to the form of brake mechanism shown in the drawing or its equivalent —in other words, if it calls for any suitable brake mechanism—the claim is too broad, because really for a function, and so is invalid under the rule of Westinghouse v. Boyden, 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136.  The principle of the Westinghouse Case is not applicable here.  There the abstract idea involved in the invention was that the preliminary traverse of the piston should admit air from the reservoir to the brake cylinder, and that a further traverse of the same piston should admit air directly from the main air pipe to the brake cylinder.  This abstract idea was given embodiment by the inventor through an auxiliary valve operated by the further traverse of the piston, and this auxiliary valve (with its equivalents and in association

with the parts of the older patent) constituted the thing of which, under the patent law, the inventor was entitled to a monopoly. The second claim, as construed by the court, went further, and undertook to claim the abstract idea involved, or, in other words, the function of the piston in its further traverse. The real analogy between that case and this rests on the fact that in one the auxiliary valve and in the other the shiftable connector formed the substance of the inventive advance over the old art.

In order to make the Westinghouse Case so parallel as to require here a conclusion of invalidity, we must find therein a holding that a claim which included as an element the auxiliary valve which constituted the invention, and also included the piston which only furnished operative surroundings for the invention, was invalid, because it covered any kind of piston rather than the variety shown in the drawings; and the case carries no such thought. To perfect the parallel from the other point of view, we must suppose a claim which specified as an element, not the form of connector which Townsend had invented, but any connecting means clutching the hub mechanism on one motion and the brake mechanism on the reverse motion. Some of the claims of the Townsend patent are subject to plausible attack on this theory; but not so, we think, of the selected claims in suit. These claims do not extend to every means by which a forward motion makes one connection and a reverse motion makes the opposite connection, nor even to every form of a laterally shiftable connector housed within the hub. They are confined to what is, in this respect and comparatively speaking, a specific embodiment of this function, viz., the connector sleeve, telescoping on the driver sleeve, driven longitudinally thereon by the intermediate screw-thread connection, effecting a taper clutch at each end of its travel and being released from both clutches at its intermediate position.

[2] Reliance is also placed upon the opinion of this court, speaking by Judge (afterwards Mr. Justice) Lurton, in Tyden v. Ohio Table Co., 152 Fed. 183, 81 C. C. A. 425. In this case, the claim calling for "means" was held invalid because it covered all means for accomplishing the result, and so was functional. We do not question the application of the rule as made to the facts of that case; but we do not understand that a claim is functional and invalid merely because one of its specified elements is "means," as in the Tyden Case, or "mechanism," as in the present case. This result may or may not follow, depending upon whether the all-inclusive term is used with reference to the element or subcombination which is the real point and gist of the invention, or whether it is used with reference to elements or parts of the combination already well-known and designed only to co-operate with the new element in order to make a completely operative unit. In other words, where used with reference to the exact point of novelty, "means" or "mechanism" may expose the claim to attack on the ground that it is functional; in that respect, each case will present a problem by itself. But where used with reference to the make-up of the field in which the real invention finds its usefulness or with reference to the connecting parts which permit the salient

novelty of the invention to accomplish its function, these words are only a convenient formula of the broadest equivalency of which the real invention permits.    Their use amounts to a statement by the inventor that, as to this element, the claim is not confined to the form shown, nor to any close imitation of that form, but extends as broadly as is consistent with the extent of his inventive step to all forms accomplishing that part of the ultimate, composite result, and, of course, does not, of itself, prevent the court (where the state of the record requires) from interpreting the claim as limited to a more or less close approximation to the "means" described in the specification.    Rich v. Baldwin (C. C. A. 6) 133 Fed. 920, 923, 66 C. C. A. 464; Kellogg Co. v. Dean Co. (C. C. A. 6) 182 Fed. 991, 1003, 105 C. C. A. 545.

That the Supreme Court has not intended, either in the Westinghouse-Boyden Case or in other instances where claims have been held void because functional, to predicate this result merely on the presence of the word "means," "mechanism," etc., is apparent.    In Morley Co. v. Lancaster, 129 U. S. 263, on page 286, 9 Sup. Ct. 299, 32 L. Ed. 715, there was an extreme instance.    The claim was for the combination of three elements: "Button-feeding mechanism; appliances for, etc.; and feeding mechanism."    The objection that this and other similar claims were void on their face because for a function could not have escaped the attention of Mr. Justice Blatchford, who wrote the opinion sustaining their broad validity; indeed he expressly said that these claims were not for the result or effect, irrespective of the means employed.    The case being, however, one of the class where the vital point of the invention—the making of the combination of these different sets of mechanism—was expressed in these general terms, it was ruled that they did not cover every possible means, but yet must be treated as terms of very considerable scope and inclusiveness.    In the latest reported decision touching this point, Paper Bag Patent Case, 210 U. S. 405, 422, 28 Sup. Ct. 748, 752 (52 L. Ed. 1122), the claim called for the combination of a rotating cylinder, forming plate, and "operating means for the forming plate adapted to cause the said plate to oscillate about its rear edge, etc."    (The claim included other mention of "means" as elements, but this is the one to which the opinion refers.) It was argued that, by extending the patent to cover a device in which the defendants used very different means of causing a forming plate to oscillate about its rear edge, the court below had given the patentee a patent for a function.    The Supreme Court held, in effect, that the use of these general terms is not objectionable in cases where the element so identified serves to provide a "working relation" for what may be called the more primary elements of the combination.    Mr. Justice McKenna says:

"The distinction between a practically operative mechanism and its function is said to be difficult to define.    Robinson on Patents, § 144 et seq.    It becomes more difficult when a definition is attempted of a function of an element of a combination which is the means by which other elements are connected and by which they coact and make complete and efficient the invention.    But abstractions need not engage us.    The claim is not for a function, but for a mechanical means for bringing into working relation the folding plate and the cylinder."

The Patent Office practice, in the shaping of claims with reference to these phrases, has vacillated. After some of the early court decisions disapproving the particular uses of these words which were involved in the cases decided, the Patent Office was inclined to forbid their use; but this confusion later settled down into the clearly established rule that these words would not be permitted where the novelty of the invention was in the specific mechanism to which they were intended to refer, but would be approved when they described "mere adjunctive devices which connect or give co-operation to the various elements or features of the invention, but are in themselves no actual controlling part of it." Ex parte Paige, 40 O. G. 807, 810; Ex parte Pacholder, 51 O. G. 295; Ex parte Halfpenny, 73 O. G. 1135. Pursuant to this rule regulating the "substantive" and the "adjunctive"—which we consider only another form of words for the distinction we have expressed—the great majority of patents during the last few years have contained claims identifying certain elements as for "means," "mechanism," "devices," etc.

In none of the cited decisions of this court especially relied upon in argument[3] do we find any holding that a claim calling for "means" is thereby, and thereby only, made functional; but, if there were any such holding, it must yield to the rule of the Paper Bag Case. These considerations demonstrate to us that the call of claim 19 for "a brake mechanism" does not make the claim functional or invalid, and that this claim is infringed. The same considerations govern the use of similar phrases and terms in claims 25–30.

[3] In determining whether the ambiguous terms of a claim should be confined more or less closely to the form shown in the drawings, it is usually well to compare with other claims which may not be in suit; and if we find other claims which call for the specific construction of a part mentioned more generally in the claims in suit, that will be a persuasive reason for not giving the limited construction to the general terms. That test is not applicable here, because no one of the claims in the Townsend patent calls for anything more particular than a "brake" or "brake mechanism," etc.; but the reason for this omission is found in the specification, which informs us that this patent is not intended to reach the particular form of brake which Townsend has devised, but that he reserves for another copending application the claims which relate to that part of his invention. This situation emphasizes and confirms our conclusion from the face of the claims in suit, viz., that they do not refer to and are not confined to any particular form of brake or brake mechanism.

We should reach the same result, if we considered the calls for a brake and brake mechanism from the point of view of substantial equivalency for the form shown in the drawing. Considering the reasonable range of equivalents to which Townsend is entitled, and the fact that both his general form of the braking mechanism and the de-

3 Columbus Co. v. Robbins, 64 Fed. 384, 12 C. C. A. 174; Western Co. v. Williams Co., 108 Fed. 952, 48 C. C. A. 159; Rich v. Baldwin, 133 Fed. 920, 66 C. C. A. 464; Wessell v. United Co., 139 Fed. 11, 71 C. C. A. 423; American Co. v. Sexton, 139 Fed. 564, 71 C. C. A. 548.

fendant's general form were well known, defendant has made no vital departure. In each case, the left-hand travel of the connector brings it into engagement with the clutch element housed in the hub. In each case the clutch element is thereby actuated, and, in turn, directly or indirectly actuates the brake shoe and drives it against the brake drum. Defendant's transposition of the drum from the hub to the axle, and of the shoe from the axle to the hub, is not, speaking broadly, a material change. The same elements coact and produce the same braking result. Although the manner of their coaction is not identical, it is similar enough to justify the requirements of the equivalency rule in this case.

The lag spring forms an element of claims 27 and 28; but defendant uses substantially the same spring in the same location and arrangement, and so these claims present no further question on this account.

The decree below is affirmed, with costs.

## On Petition for Rehearing.

Defendant's petition for rehearing forcefully again presents one position not considered in the opinion filed. The opinion assumes that defendant's interior hub sleeve 6 is the "tapered clutch element carried by the hub," of claim 19, and that it provides the clutching function at the left-hand end of the connector which is called for when the opinion defines Townsend's invention as residing in the "connector sleeve clutching at the pleasure of the rider the driving mechanism or the braking mechanism or neither." This assumption in the opinion is now challenged because (it is said) this hub sleeve is not a clutch at all, and performs no clutching function, but is one member of a brake pair, and is nothing else.

As matter of strict terminology, the opinion was wrong in calling this hub sleeve a "clutch," or a "clutch element"; but we think that this precision in name is not a matter of substance, and that the hub sleeve is fairly within that breadth of definition which, from the record, should be given to "clutching" and "clutch element." Here, again, we must notice, as pointed out in the opinion, the frequent lack of structural distinctions and the uncertain functional distinctions between a clutch and a brake. Not only is a clutch a brake while the clutch is being set, but while a brake of this class is being set it is a *slipping* clutch. Hence it is obvious that the name by which the part happens to be designated is not, of necessity, controlling. Ordinarily, we think of a clutch as a device by which two separable members are made continually to revolve in unison; but Townsend, when speaking of a clutch element at the left-hand end of his connector, did not use the term in this full sense, since his clutch socket G and its attached rocking actuator could turn only a small fraction of one revolution. The fact is that the left-hand motion of the connector operates to push an intermediate element which, in turn, pushes one of the brake members. As the motion called for by Townsend's form was rotary, he calls this intermediate element a clutch element. His specification calls it merely "a suitable clutch whereby" the connector sleeve may be connected with the brake actuator.

217 F.—50

When the tapered left-hand end of defendant's connector sleeve moving to the left first makes contact with the taper socket in the end of the hub sleeve, there is no effect, except that the hub sleeve is pushed longitudinally. As soon as the limit of this motion is reached, there is a tendency for the connector sleeve and the hub sleeve to set together and to revolve in unison. This is a clutching tendency, and it takes partial effect, but cannot take full effect, because one member cannot revolve. Eventually, when and while the members are set together, neither can revolve, except in unison with the other, and this again discloses a clutching function.

While, as above pointed out, the mutual engagement of Townsend's left-hand taper sleeve and its taper socket is not, in the extremest sense, "clutching," it is properly enough so called in the specification and the claim; but "clutching" is only the form of engaging appropriate to actuate Townsend's form of brake. The real ultimate function is to "engage and actuate"; and the mere use in the claim of the name "clutch element" does not prevent extending it to cover an element which, though it engages and actuates, and though it looks like a clutch, and though part of the time it acts like a clutch, yet is not merely a clutch all the time. We do not intend hereby to adopt a construction for claim 19 which will make it coextensive with certain other claims not in suit, which call for any means of engaging instead of for taper clutch elements. There is room for distinction.

The suggestion in the opinion that "it may be assumed that the connector and the right half of the sleeve, 6, lock together with an efficient friction clutch," implies inaccuracy when thus stated. They do not lock together until the revolution stops; the existing tendency to lock together is resisted and retarded. The definitions in the opinion which incorporate the clutching function should say "clutching or equivalently engaging," and, so reformed, are not open to the criticisms now urged. That the method of engaging and actuating employed by defendant at this end of the connector, if, indeed, it is not "clutching," is equivalent, is, we think, sufficiently shown by what has been here said about its operation and what was said in the opinion regarding the field of equivalency.

The petition also presents a supposititious structure in which the left-hand end of the connector and the right-hand end of the hub sleeve are not tapered, but have vertical, parallel faces, and the left-hand movement of the connector operates only to push the hub sleeve along into a braking contact at its other end. It is said that here the taper clutch element would disappear. This supposed construction presents questions of equivalency, and of uniting in one part the functions of two, or the converse, which are not necessarily involved in deciding this case. It is sufficient to say of them as we said in Grever v. Hoffman Co., 202 Fed. 923, 927, 121 C. C. A. 281, 285:

"It will be time enough to consider that question, if such a machine is ever built and works well enough to justify an infringement suit."

The petition for rehearing is denied.