## MIAMI CYCLE & MFG. CO. v. WALD.

(Circuit Court of Appeals, Sixth Circuit.    August 3, 1920.)

No. 3293.

Patents ⊂⇒328—Reissue 13,946, for bicycle coaster brake, held not infringed.
    The Wald reissue patent, No. 13,946 (original No. 1,058,280), for a
    bicycle coaster brake, as limited by the prior art, *held* not infringed.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by Michael J. Wald against the Miami Cycle & Manufacturing Company. Decree for complainant, and defendant appeals. Reversed.

F. B. Brock, of Washington, D. C. (B. F. Harwitz, of Middletown, Ohio, on the brief), for appellant.

Carl P. Goepel, of New York City, for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The defendant below, the Miami Company, appeals from a decree for the usual preliminary injunction and accounting based upon its infringement of reissue patent No. 13,946, to the plaintiff, Wald, dated July 13, 1915, for an improvement in bicycle coaster brakes, the original patent having been numbered 1,-058,280, issued April 8, 1913, upon an application filed January 28, 1911. The appeal can rightly be disposed of upon consideration of one matter only, which will make unnecessary detailed reference to many features involved.

It was desirable for ordinary forward progress in a bicycle that the driving sprocket and the hub of the rear wheel should be rigidly connected, while for braking by back-pedaling pressure the sprocket should be disconnected from the hub and united to the brake member, and for coasting, when the pedals are to be held stationary, the three members—driving sprocket, hub, and brake—should be free each from the other. Long before Wald's application, these results had been accomplished by O'Horo, whose patent therefor had been reissued to him September 28, 1909, No. 13,023; by Townsend, whose patent was issued April 9, 1907, on an application filed in 1898, and was numbered 850,077; and by Robinson, No. 968,604, August 30, 1910 (filed 1902). This Townsend patent was fully considered in our opinion in Davis Co. v. New Departure Co., 217 Fed. 775, 133 C. C. A. 505, where may be found a more complete description of the principles involved than is now necessary.

Each of these four patents—Townsend, O'Horo, Robinson and Wald—employs the same general form, having a driving sprocket, a stationary axle, a revolving hub shell, and a brake member anchored to the axle. The driving sprocket, which may be thought of as at the right end of the hub, carries a sleeve extension surrounding the axle,

and upon the external surface of this sleeve is a worm. The inner portion of the hub at the right carries a clutch member, and further to the left, midway of the hub and surrounding the axle, is a clutch member, connected to and operating the brake mechanism. Between these two respectively fixed clutch members is an intermediate floating or shiftable clutch member, in the form of a sleeve surrounding the worm sleeve of the driving sprocket and having an interior worm thread. When this is carried to the right by the forward rotation of the driving sprocket and this worm thread connection, its right end engages with the hub, and driving sprocket and hub are locked together. When the rotation of the sprocket is reversed, this intermediate member is carried to the left, and its left face engages with the brake member, and then driving sprocket and brake are firmly united. When this third member is in intermediate position, and neither of its clutch faces is in engagement, the pedals may be held stationary, the hub will rotate freely forward' or backward, and the brake will remain inactive. This double-acting intermediate clutch member is called by O'Horo a shifter, by Townsend a connector, by Robinson a clutch sleeve, and by Wald a sliding bur.

All agreed that another element was desirable, although, theoretically, it was not absolutely essential. If this connector were carried merely by this worm sleeve engagement, it would tend to rotate in unison with that sleeve, and hence the engagement would not be certainly effective to cause the connector to move longitudinally upon the sleeve. Obviously, it should remain relatively stationary, so far as revolution is concerned, while the worm sleeve is turning one way or the other, and yet it cannot be fixed to the stationary axle, because, after it is in clutching engagement upon either face, it must revolve one way or the other. All these patentees accomplish this result by a spring which insures friction with the connector so as to retard both its revolution and its longitudinal motion (at least in one direction), and yet will permit both when the frictional effect of the spring is overcome.[1] In every case such retarder spring not only compels longitudinal motion upon the worm sleeve when the latter is rotated, but also (unless in Robinson) holds the shifter against such longitudinal motion when there is no such rotation; in other words, during coasting, it will tend to hold the connector midway between the two clutch faces and out of engagement with either.[2]

In Robinson's form, his clutch sleeve carried bevel gear teeth upon each end, and the opposing clutch faces of the hub and brake members had correspondingly shaped bevel gear teeth. In Townsend's con-

[1] The Robinson spring seemingly must operate in this way to accomplish its described results, but some details are not clear.

[2] In attributing to Wald this capacity to hold the shifter in intermediate position, we accept the statements of his counsel; though, since the hub and shifter are in constant spring frictional contact, and this must tend to induce constant rotation of the shifter, it would seem that it would not stand in the intermediate position, but would always make at least a dragging contact at one end or the other. Possibly this is a reason why the specific Wald form has never been built, even in a model for the hearing.

struction, the outside of his connector was largest in the center, tapering towards each end, and the corresponding interior hub and brake surfaces were likewise tapered; the result being, at either end of the motion, a tapered friction clutch approximating a cone clutch. O'Horo had a shifter, carrying at the left a positive engagement shown by serrations or teeth engaging with corresponding teeth upon the brake member clutch, and at the right a tapered or cone friction clutching surface, substantially like Townsend, with a similar friction clutching surface upon the hub also substantially like Townsend. Mindful of that equivalency between different common forms of clutch which, in this art, is illustrated by Townsend and Robinson, O'Horo said:

"The right-hand end of the outer surface of the shifter is formed into a conical clutch surface adapted to engage the internal conical clutch surface 34 provided in the hub near its right-hand end. Positive clutch members on the shifter and hub may be substituted for the frictional clutch members shown. The left-hand end of the shifter is provided with a clutch surface, in the present exemplification consisting of corrugations or serrations 28, and the adjacent end of the clutch 23 [on the brake member] has a clutch surface consisting of similar corrugations or serrations 25; this surface sometimes being identified, particularly in the claims, as a 'clutch member.' The nature of the clutching engagement between the shifter and clutch 23 may be varied. For instance, frictional engagement may take the place of the positive engagement provided at the corrugations 25, 28."

It would not be easy to make a statement of the equivalency of contemplated variations which should be broader, in this particular, or more clear and intelligible. O'Horo declares that the left clutching surface for the brake may be either positive or frictional, and that the right clutching surface for the hub may be either positive or frictional. He does not, in so many words, say that both may be frictional, as Townsend made them, or both may be positive, as Robinson made them; and, if it may be conceivable that there would be invention in doing either one of these things, in view, alone, of O'Horo's declaration, no such thought can be entertained as to such a step taken after Townsend and Robinson had done both. Yet, as to his connector or sliding bur, Wald made no change from O'Horo, save to provide positive engagement for both faces, instead of for one; and he did not even provide some new form of positive engagement for the right end of the shifter. He used practically the same form which O'Horo had on the other end. It is too plain for doubt that there was no inventive merit in this change—made by Wald in 1911.

As to the retarder spring, it is not clear how it may be very important whether the retarding friction is directly between hub and shifter, or mediately between axle and shifter. Wald employed the former; O'Horo the latter. Either may insure both the longitudinal motion of the shifter when desired, and its stationary central holding when desired. Whether there is in Wald's form of spring sufficient novelty and utility to give validity to the two claims in suit we need not consider, because it is not used by defendant. The Miami Company was the owner of the O'Horo patent, and it manufactured for a time a device in the specific form shown by the drawings of that patent. It finally changed its construction, so as to have the positive

or toothed clutch action on both ends, like Wald, instead of on the left end only; but it did not modify its form of spring. Very possibly this change was made after the Wald patent issued; indeed, it may be that the superintendent or officer who made the change got the suggestion from the Wald patent, instead of from the O'Horo patent; but, if so, it was because he had not read what O'Horo said. The owner of an earlier patent, who manufactures the device shown and described in his patent, save only that he substitutes in one particular a form which not only is plainly a mere mechanical equivalent for the form in his patent drawing, but was so declared to be by the specification, certainly cannot thereby infringe upon a later patent, which has embodied and claimed that change, in connection with others.

Claims 3 and 5 are the only ones now involved. Claim 3 is in the same form as in the original patent, and is plainly limited to Wald's specific type of retarder spring, in combination with his double-faced sliding bur; 5 is a new claim, added in the reissue, and is broader, in that it claims, in the same combination, "resilient means" for holding the shifter in intermediate position. To give to claim 3 a construction broad enough to find infringement would make it invalid, and we think it should be construed more narrowly, and should be held not infringed. As to claim 5, it can have no validity, unless its general language implies a spring of the Wald rather than of the O'Horo type—in which case, defendant does not infringe. Its possible validity, thus limited, is therefore not necessary to decide.

The decree must be reversed, and the case remanded, with instructions to dismiss the bill. There is no occasion to consider whether the expansion of the reissued claim is permissible as against the alleged intervening rights.