## WHITE TOOL & SUPPLY CO. v. AIR REDUCTION CO., Inc.

### No. 5653.

Circuit Court of Appeals, Sixth Circuit.

April 15, 1931.

Drury W. Cooper, of New York City (Cooper, Kerr & Dunham, of New York City, Kwis, Hudson & Kent and B. M. Kent, all of Cleveland, Ohio, on the brief), for appellant.

Dean S. Edmonds, of New York City (Brockett, Hyde, Higley & Meyer, of Cleveland, Ohio, and Pennie, Davis, Marvin & Edmonds and Leslie B. Young, all of New York City, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

This is a suit for infringement of claims 1, 2 and 4 of the Bucknam patent, No. 1,059,-329, for an apparatus for severing metals by means of gases. The defenses are invalidity and noninfringement. The court below denied both defenses, sustaining all the claims relied upon and holding them infringed.

The patented structure is used for making cuts of any desired form or design in metals of varying thicknesses. It consists of a blowpipe such as an oxyacetylene torch for making the cut, a tracer for following a design or pattern, a supporting structure for the torch and tracer which, when the tracer is moved according to the pattern, will cause a like movement in the torch and the cutting of a like design in the metal. The tracer is propelled by means of gearing which may be operated by hand or motor, the preferred means being a motor. The patent illustrates preferred and certain alternative forms. Claims 1 and 4 call broadly for a combination comprising three elements: (1) Means for delivering jets of gaseous heating and oxidizing agents; (2) means for supporting the jet for universal movement in a plane; and (3) means for propelling the jet-delivering means at uniform speed in any and changing directions. Claim 2 is more limited, calling for "pantographic connections" for producing relative movement between the jet-delivering means and the work in accordance with the movements of the tracer.

The claim of aggregation is based upon the ground that the elements of the claims were old, and that, as brought together, each of them performs its characteristic and well-known function without modifying the action or functions of the others. The elements, it is true, were old in other associations, but we do not find in any of the earlier patents or

older devices a functional or co-operative equivalent of the Bucknam combination. This is evidenced by the favorable reception that the device received from the trade when it was placed on the market. Before Bucknam entered the field no one had thought of the advantages of a gas cutting torch that could be mechanically propelled at a uniform and regulable rate of speed. His device embodied elements that brought about that character of operation for the first time, with the result that it was almost immediately accepted by the public and has since dominated the field in which it operates. Considered in this light, we have no difficulty in concluding that it is a true combination.

The object of the invention is not merely to cut metal, but "to secure accuracy, continuity and cleanness of cutting," and, lacking uniformity of speed, this could not be done to the high degree that it is done by the device as presently constituted. This element is stated in the patent specifications to be of "primary importance." We do not find that it has been utilized in any of the earlier structures. The Foster patent, No. 978,012, which is perhaps the closest reference, was for an apparatus having a gas-delivering torch mounted on a pantographic machine used for making designs on leather. Undoubtedly this device might have been reorganized and adapted to the cutting of metal, but it contained no suggestion of uniformity of speed which is the necessary result of the co-operative action of Bucknam's mechanical means and is itself made an element at least of claims 1 and 4. It was the taking of the well-known older elements of Foster and other devices and combining them with an element not found in any of them that in our opinion constituted the Bucknam invention. Foster, lacking this additional element, does not amount to anticipation. Some of the patents in related arts, such as Palmer, No. 308,-982, for a quilting machine, and Edison, No. 847,746, for an electric welding machine, had mechanical propulsion which may be assumed to have been regulable, but in none of them was uniformity of speed sought or essential in attaining the objects of the patent. Other patents cited cover devices for supporting a movable gas cutting torch. Some of them could be used to cut circular or curved pieces, but no patent cited except Foster was adaptable to the cutting of the irregular designs and shapes that Bucknam's device cuts, and, as pointed out, Foster lacks the important feature of uniform speed control. None of the prior patents suggests this element, and none, in our opinion, anticipates claims 1 and

4. The prior publications relied upon show nothing that is not shown in the earlier patents.

The claim of anticipation by prior public use is based on the use of the American Oxhydric machine. This machine comprised a slide movable longitudinally of the supporting base of the machine, on which there was a cross slide which carried a cutting torch with means manually to operate and control the movement of both slides so as to effect a movement of the torch in any direction in a plane. The machine had no tracer, and the slides were operated by separate screws. The line of the cut was marked out on the piece to be cut, and the operator was required to watch the progress of the cutting jet and move the torch to cause it to follow the line. The machine seemed to have been devised as a straight line cutter. Unless operated by an expert, it would seem to have been unfitted for cutting irregular shapes such as are cut by the Bucknam machine. In any event, it had no efficient means for propelling the cutting tool at a uniform speed. We think its analogy to the patent in suit is no closer than some of the patents cited in the prior art.

Nor do we think the patent must be declared invalid because of double patenting. A patent for a "pantograph apparatus" was issued to Bucknam on the same day as the patent in suit. This other patent bears a lower patent number, No. 1,059,271, than the patent in suit, and it is contended by appellant that it discloses the same invention. As the two were issued as the result of one application, the case is different on this point from Sandy MacGregor Co. v. Vaco Grip Co., 2 F.(2d) 655 (6 C. C. A.). Appellee contends that the present patent may be sustained as covering an essentially distinct and separable device. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121. The position of the appellant is that claim 21 of the lower numbered patent is co-extensive with the claims in suit. The claim in question calls for a pantographic apparatus having a swiveled tracer, a cutting apparatus, and means for causing the cutting apparatus to turn in unison with the swiveled tracer. Nothing is said about uniform speed control, and, in our opinion, "means for causing the cutting apparatus to turn in unison with the swiveled tracer" is not the equivalent of means for propelling the torch "at uniform speed in any and changing directions." Moreover, while it is stated in the specifications that the device carried or propelled by the pantograph "may be of any desired na-

ture," as, for example, a gas cutting apparatus, the patent relates broadly to a "pantograph apparatus." In the absence of any call in the claims for uniform speed control, we see no reason why Bucknam should not have been permitted to make claim to the two combinations either by separate claims on the same application or by the division route, and thus take a separate patent for a combination including this element not included in the other combination. The Patent Office evidently thought he ought to do so. Such a patent might well be valid, while a patent for the combination without the uniform speed means might not be. We think there was no double patenting, even if it be assumed that because of its lower number patent No. 1,059,271 was an earlier patent.

On the question of infringement, it is contended that, if the claims are to be given a construction that avoids anticipation by the American Oxhydric machine and by prior patents, the term "means" as used therein must be construed as limiting the patentee to the particular form of means disclosed in the patent, and, as thus limited, appellant's device does not infringe, because its tool carrying and tool operating frame is of the double carriage type, whereas appellee's is pantographic. As previously stated, we think claims 1 and 4 are valid as disclosing a combination employing for the first time uniformity of speed. This conclusion is necessarily founded upon the view that "means," as used in the claims, is not referable to the primary elements as such, but to the connecting parts as they co-operatively accomplish the perfected operation. As thus construed, the claims are to be given as broad equivalency as is consistent with the inventive step. Davis Sewing Machine Co. v. New Departure Manufacturing Co., 217 F. 775 (6 C. C. A.). The double carriage machine is the means appellant employs for supporting the cutting torch for universal movement in a plane. Appellee uses the pantograph as a preferred form, its patent drawings disclosing no other, and claim 2 calling for that particular type of means. Claims 1 and 4, however, are not so limited, but call for means "supporting the same [the cutting torch] for universal movement in a plane" or for mechanism "supporting and propelling the same at uniform speed in any direction." The use of a pantograph for accomplishing this movement was concededly old, but it was also old to use the double carriage for a like purpose. Badger, No. 561,367, Gregory, No. 883,798. Both were familiar structures, and we see no reason why "means" or "mechanism" for supporting the torch in universal movement in a plane, as called for in the claims, would not cover any well-known mechanism commonly used for accomplishing such movement. The fact that appellant's pattern takes the form of a templet, the tracer being a rotating spindle moved along the edges of the pattern, while appellee's pattern is a drawing or design which is followed by a swiveled roller, is immaterial. The tracer which appellee uses is not referred to in claims 1 and 4. Its use adds nothing to the invention. The only difference between the appellant's device and the device called for in claims 1 and 4 is in the type of the jet-supporting and jet-moving frame, and in our opinion the one is the equivalent of the other in such combination. Claim 2, however, is specifically limited to a pantographic form, and, even if valid, would not be infringed. We do not pass upon the validity of this claim; it being sufficient for present purposes that claims 1 and 4 are valid and infringed.

The decree below, so holding, is affirmed, with costs.