## UNITED SHOE MACHINERY CORPORATION v. H. GORDON CO., Inc.

### No. 5836.

Circuit Court of Appeals, Sixth Circuit.

June 27, 1932.

Hector M. Holmes, of Boston, Mass. (Fish, Richardson & Neave, of Boston, Mass., on the brief), for appellant.

William R. Wood, of Cincinnati, Ohio, for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

904

HICKS, Circuit Judge.

This appeal involves Wentworth Patent No. 1,307,284, granted June 17, 1919, for a "Heel Seat Forming Machine" and Bowie Patent No. 1,432,524 granted October 17, 1922, for a "Heel Seat Fitting Machine." Both patents relate to machines for shaping the heel end of a shoe sole to fit the wooden heel to be attached. Claims 44, 51, 53, 54, and 61 of Wentworth and 1, 3, 4, 5, 6, 9, and 14 of Bowie were in issue. Typical claims 54 of Wentworth and 6 of Bowie are printed in the margin.[1,2]

The defenses, with which we are concerned, are invalidity and noninfringement. The District Court decreed that the claims in issue in neither patent were infringed.

When the sole of a shoe is lasted to the upper and becomes ready for the heel fitting operation, if the shoe is to have a wooden heel, it becomes necessary to bevel the edge of the heel portion of the sole to fit snugly the concave seat of the heel. Before Wentworth, the workman accomplished this by trimming away the edge of the heel portion of the sole with a knife.

Wentworth's conception was a machine that would do this work automatically and more uniformly and speedily than it was accomplished by hand. The structure and operation of the Wentworth machine was substantially as follows: When the shoe was ready for heel fitting its heel end was presented to the machine upside down and was clamped between metal jaws. These jaws engaged the shoe along the "rand crease" and held it firmly. In sequence a barrel-shaped roller automatically engaged the rear of the heel portion of the sole and rolled under pressure lengthwise of the shoe toward the toe, depressing the sole along its median line so that a knife following the roller, chisel fashion, contacted the edges only of the sole and sliced off a horseshoe-shaped strip

which tapered toward the center. At the proper time a curved cut-off knife descended across the sole, severed this horseshoe strip and left small shoulders against which the heel breast abutted.

The Bowie machine eliminated the metal jaws or clamps altogether. When the Bowie machine engaged the sole, the shoe was held perpendicularly by the operator with the toe downward. A metal gauge adjustable at one end and wedge-shaped at the other, where it was inserted in the rand crease, served as a guide to the operator and as a rest for the shoe, and protected the upper as the shoe was moved around by the operator from the point of the heel breast on one side to the corresponding point on the other while a rotary frusto-conical shaped cutter mounted on a horizontal shaft cut from the edge of the heel portion of the sole a horseshoe-shaped area as in Wentworth. By a separate operation milling cutters produced the shoulders against which the heel breast abutted.

Appellee insists that the issue claims in both Wentworth and Bowie are functional and void because they specify "means" as one of the mechanical elements of the combination. We do not think that we are required to determine the point. We think we may assume without deciding that the term "means" was used in the sense defined in Davis Sewing Machine Co. v. New Departure Mfg. Co., 217 F. 775, 782 (C. C. A. 6), and that the claims as written evidence invention. See Willett Mfg. Co. v. Root Spring Scraper Co., 55 F.(2d) 858 (C. C. A. 6), and Gilchrist Co. v. Kar-Lac Co., 29 F.(2d) 153, 154 (C. C. A. 7). Wentworth and Bowie were not pioneers. They neither created nor advanced the shoemaking art generally. They were improvers only in a minor subdivision thereof, and we think they are entitled to no broader range of equivalents than is necessary to protect their inventions. See Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 414, 28 S. Ct. 748, 52 L. Ed. 1122; Eibel Process Co. v. Minn. & Ontario Paper Co., 261 U. S. 45, 63, 43 S. Ct. 322, 67 L. Ed. 523; Rich v. Baldwin, Tuthill & Bolton, 133 F. 920, 923 (C. C. A. 6). We find no reason for extending the element "means" beyond a substantial approximation of the operating means found in the specifications. See Davis Sewing Machine Co. v. New Departure Mfg. Co., supra; Merit Oil Equipment Co. v. Fry Equipment Corp., 48 F.(2d) 488, 489 (C. C. A. 6), and White Tool &

[1] "54 A machine for operating upon the attached sole of a shoe prior to the attaching of the heel, having in combination, means for supporting the margin at the rear portion of the sole, and means for removing stock from the margin so supported in such manner as to form a convexity to receive the concavity in the heel which is to be attached."

[2] "6 A machine for shaping the heel end of a sole to prepare it to receive a wooden heel, having, in combination, a gage adapted to engage the upper of the shoe to which the sole is attached and to permit the shoe to be swung while it is moved along in contact with the gage from the end of the line of the heel breast on one side around to the opposite end of the line of the heel breast, a cutter, and means for causing the cutter to bevel the margin of the heel end of the sole by a cut which extends from the junction of the upper with the sole to a horse-shoe-shaped line inside the line of said junction."

Supply Co. v. Air Reduction Co., 48 F.(2d) 720, 722 (C. C. A. 6).

In Wentworth the combination elements are: The jaws engaging the rand crease, the movable presser illustrated in the drawings as a barrel-shaped roller, the curve-bladed trimming knife following the presser, and the curve-bladed cutting-off knife.

In Bowie the elements are: The guide engaging the rand crease, which was old (see Patent to Helm, No. 206,671,—1878), the frusto-conical cutter with means to operate it, and the cutting-off knives.

The alleged infringing machine of Gordon differed substantially and materially from both Wentworth and Bowie. To trim the heel portion of the sole for fitting the heel seat Gordon used a thin double-edged flexible blade extended in a horizontal plane. This blade operated longitudinally with a rapidly reciprocating motion. During the cutting operation the shoe was supported by the operator, and steadied by a thin edged disk engaging the rand crease and rotating on its own axis and parallel with the blade. The operator inserted the heel portion of the sole between the disk and the blade and then turned the shoe and its supporting disk while the blade cut the bevel on the edge of the sole. The supporting disk is freely rotatable in either direction so that the trimming process can be carried on from left to right or right to left.

It is apparent that there is little in common between Wentworth and Gordon. The Wentworth operation was wholly automatic. The presser roller, the chiseling knife, the cut-off knife, and the jaw-shaped clamps in Wentworth are all absent in Gordon. The structural differences between Bowie and Gordon are just as impressive. Gordon has neither frusto-conical cutter nor cut-off knives, and neither Wentworth nor Bowie has any reciprocally operating blade or rotatable guide. The flexibility of the Gordon blade which makes it possible for the operator, by inclining the shoe and bending the knife, to make the cut at any required angle, is wholly absent from both Wentworth and Bowie. We forbear to point out other distinct differences. Upon the whole we conclude that, while the three machines accomplish the same general result, the dissimilarity of structure between either Wentworth or Bowie and Gordon will not justify a finding of equivalency or infringement.

Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 571, 18 S. Ct. 707, 42 L. Ed. 1136; Directoplate Corp. v. Donaldson Lithographing Co., 51 F.(2d) 199, 202 (C. C. A. 6); Willett Mfg. Co. v. Root Spring Scraper Co., supra.

The decree of the District Court is therefore affirmed.