PROSPERITY CO., Inc., v. AMERICAN MACHINE & METALS, Inc.

No. 83.

District Court, D. Delaware.

Feb. 10, 1942.

Drury W. Cooper, William Bohleber, and John M. Montstream, all of New York City, for plaintiff.

Willis B. Rice, of New York City, for defendant.

KIRKPATRICK, District Judge.

This is a suit for infringement of U. S. Patent No. 1,609,273 to Davis, for operating and control mechanism for garment pressing machines. The pressing is done by means of a flat-surfaced, steam-heated member, called a head, which is mechanically brought down upon a padded member, known as a buck, upon which the garment is spread. Considerable force is required to accomplish the pressing properly, the maximum being 1,200 pounds over its entire surface.

Pressing machines have gone through the usual cycle of hand-operated, semi-automatic, and fully power-operated. In the second type the operator brought the head down by hand and then put the "squeeze" on by power. In the last, the operator has nothing to do but start the press by the controls and, later, release the head, after the garment has been pressed.

Safety of operation is a prime consideration. Unless guarded against, many accidents will be caused by the operator putting her hand under the descending head in order to smooth out a wrinkle and failing to withdraw it before it is caught and burned or bruised. Hence operating and control devices such as that of the patent are primarily designed to insure a safe operation.

There is also another object. It takes 45 to 60 seconds to press a garment properly. If the operator has to use her hands to hold the press closed, she can operate only one machine at a time, whereas if the press automatically stays closed until released she can move from one machine to another and so keep three or four going at the same time.

The Davis Patent, of which only claim 9 is in suit, involves a power press, the motive force being compressed air, and the power transmitting mechanism being a cylinder and piston. It is unnecessary to describe it in detail. It consists of a number of mechanical elements each of which is to be found in the prior art. This is conceded by the plaintiff, and the defendant concedes that in no prior art structure are all the major elements of the patent to be found in combination. I am satisfied that the patent discloses a true combination and that, qua, combination, it is novel. The questions of invention and infringement remain.

The concept embodied in Claim 9 attains the two objectives which have been referred to—safety of operation and retention of the head and buck in closed position until released. The elements which accomplish this result are described in the claim, in combination with a power-operated pressing machine, as (a) "a pair of exhaust valves connected in multiple with the motor, manual means individual to the exhaust valves for closing the same, one of said manual means operating to open the control valve," and (b) "means for holding the exhaust valves closed after the press is closed."

To anyone skilled in the art or with some knowledge of mechanics (a) means simply two-hand control—a well known safety system designed so that the operator of a machine cannot lift either hand from the control mechanism without stopping the machine. The control points are widely enough separated so that one hand cannot cover both. The lifting of either hand results (in the Davis patent) in opening an exhaust valve, whereupon the motive force is dispelled and the machine springs back to its original position. There are various ways of accomplishing the two-hand control. The general method adopted by Davis of using two exhaust valves connected in multiple with the motor is not new.

(b) describes what has been referred to throughout the hearing as a "locking" mechanism. The term "locking" will be a trifle misleading unless it be borne in mind that what is locked is not the descending head but the exhaust valves, and this brings us to an important part of the controversy.

The point of the distinction referred to will be seen when we consider the way locking works in combination with the safety feature. In a pressing machine such as the one involved here, it is essential to the safety feature that it does not lock prematurely. As soon as the exhaust valves have been automatically sealed the lifting of the oper-

ator's hand from the controls will not open them, and if that happens while the head is descending, the head will not stop but will complete its operation. If there is still a space between the head and the buck, the danger of the operator getting her hand caught still remains. Therefore, it is of the greatest importance that the locking of the exhaust valves be delayed until after the head has come in contact with the buck or so close to it as to leave no space for the operator's hand to get between them. So long as that is accomplished it is immaterial whether the locking takes place before or after the final "squeeze."

The inventive concept of the Davis patent lies, in my judgment, not in the mere juxtaposition, in a power operated pressing machine, of a two-hand control and mechanism to prevent the valves from opening. Bringing these elements into the machine might well be no more than a mere aggregation. For example, that would be the case if with the two hand control there were a third control which could be operated without lifting the hand and which closed the valves only when the operator chose to press it—a description which, as will be seen, comes pretty close to fitting the defendant's machine. Or it might be a combination, and still lack invention.

■ I think, however, that to design the whole so that, without any further or additional movement of the operator's hand, the exhaust valves lock automatically in the regular course of the operation and lock only after the safety point of contact between buck and head had been reached, and cannot lock before, required invention. Admittedly the functioning of the machine is efficient and safe. And if it had been as simple a matter to combine a locking mechanism with the two-hand control in a power operated press without impairing the safety feature and without making the machine unduly complicated to operate as the defendant professes to think one would think that the prior art would have produced some combinations at least pointing the way toward that result. There is, however, no such combination.

■ I think that the last clause of the claim clearly must be considered as meaning that the mechanism to hold the exhaust valves closed operates only after the press is closed or closed to the point of safety. It is a "means" clause, however, and to sustain the validity of this claim the clause cannot be extended "beyond a substantial approximation of the operating means found in the specifications." United Shoe Machinery Corp. v. H. Gordon Co., 6 Cir., 59 F.2d 903, 904. And we therefore turn to the specification, because the scope of the claim and consequently the question of infringement must be decided in its light.

Both the plaintiff's patent and the defendant's machine accomplish the locking of the exhaust valves by means of the same compressed air which furnished the motive power for the piston. In the plaintiff's patent, the air is backed up from the cylinder through a port and a pipe into two chambers containing rubber diaphragms which, when a sufficient pressure has been built up, actuate plungers which in turn through levers hold the exhaust valves closed. The action is automatic, requires no additional effort on the part of the operator, and is delayed until the proper time by the location of the port which leads the air out of the cylinder. This is not open until the piston has reached a position where it has practically closed the press. In the defendant's device one of the two exhaust valves is locked by substantially the same kind of mechanism as both of the plaintiff's. I do not think that the distinction attempted to be drawn between the methods in this particular part of the locking operation is well taken. However, the other exhaust valve cannot be closed and locked except by an additional thrust by the hand of the operator upon one of the control levers and, in addition, the mechanism is so arranged that this additional thrust or pressure will not lock it until the point has been reached where the diaphragm has closed the first valve. In other words, the defendant requires a second manual operation to fully lock the valves and then provides an additional safety mechanism to make that manual operation inoperative until the time has arrived when the press has closed and the safety feature of two-hand control will not be interfered with by the locking of the valves.

■ So considered, I am of the opinion that the defendant's device does not infringe. Apart from the details of its mechanical construction it is a much more complicated piece of mechanism than the plaintiff's and is not, so far as the locking device goes, fully automatic.

■ In support of the finding of validity which I have made, the prompt and complete commercial success of the plaintiff's machine is properly to be considered

as evidence. But, in addition to that, I think that it accentuates the difference between the plaintiff's machine, which has practically taken the market, and the defendant's machine, which was discontinued after a comparatively brief period of manufacture.

### Findings of Fact.

The statements of fact contained in the foregoing opinion may be taken as special findings. In addition, I find as follows:

1. Claim 9 of the patent in suit is for a combination which is novel and which is an inventive advance over the prior art.

2. The patent is not infringed by the defendant's accused device.

### Conclusions of Law.

1. Claim 9 of the patent in suit is valid.

2. The clause of claim 9, "means for holding the exhaust valves closed after the press is closed," must be construed as no broader than the description of the means for holding the exhaust valves closed disclosed in the specification.

3. The defendant is entitled to judgment with costs.