### BANNING v. SEARS, ROEBUCK & CO.

#### No. 7091.

Circuit Court of Appeals, Sixth Circuit.

Feb. 10, 1937.

F. Allan Minne, of Chicago, Ill., for appellant.

Stephen H. Philbin, of New York City (Clyde A. Norton and M. Theodore Simmons, both of New York City, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

Appellant owns Edelman patent No. 1,680,370, issued August 14, 1928, on application made March 23, 1925, for a "radio power supply unit," and brought the usual infringement suit against the vendor of receiving sets manufactured by the Colonial Radio Corporation. While both validity and infringement were in issue, the court below, finding infringement not established, thought it unnecessary to pass upon validity of the patent and entered a decree dismissing the bill. This appeal followed.

The claims in suit have heretofore been litigated in the Seventh Circuit, where a District Court found them valid and infringed by the Majestic radio of the Grigsby-Grunow Company of Chicago. Banning v. Hartman Furniture & Carpet Co., 49 F.(2d) 331 (D.C.Ill.). On appeal this decision was reversed and the claims held to be invalid on the ground that they describe not a new combination producing a single result, but a mere aggregation of several results, each the complete product of one of the combined elements. Hartman Furniture & Carpet Co. v. Banning, 59 F.(2d) 129 (C.C.A.7). In the present suit, the plaintiff, conceiving the issue with respect to aggregation as having been raised by the pleadings, and complaining that such issue was neither raised nor met in the previous litigation, was at pains to demonstrate coaction among the several

elements of the combination to produce a unitary result. Whether such demonstration requires a result as to validity differing from that reached by the Seventh Circuit Court of Appeals, we are not called upon to say. The difficulty of demonstrating combination or its absence in the electrical art was apprehended by us in Dunham v. Kelley-Koett Mfg. Co., 246 F. 845, 849, wherein we felt required to take notice "that very many electrical patents cover apparatus in which the different elements act (in theory) successively upon the current, and this whole class of patents can hardly be declared void because not for true combinations." The difficulty there noted is here likewise apprehended, but being in agreement with the District Judge upon the issue of infringement, we are not required to resolve it, and find it sufficient to rest decision solely on absence of infringement.

Current for early receiving sets was, as is well known, supplied by batteries. In the simple circuit for a three-element vacuum tube the filament was connected to the A battery and the plate and one terminal of the filament to the B battery. Both supplied pure, direct current. As the art developed, a much larger amount of current was required to supply reserve power for tubes and loud speakers, and this so increased cost, weight, and size of cabinets that workers in the art sought means for utilizing the source of electrical energy available almost everywhere at the electric light socket. This however, usually provided alternating current. The problem was not so much the translating of alternating current to direct current as it was to "smooth out" and to free from objectionable pulsation the direct current thus transformed. To this Edelman addressed himself. The state of the art and Edelman's asserted advance thereon are so clearly and fully discussed by Judge Lindley in the District Court case above cited that no issue here requires or invites either amplification or repetition, except to note for present purposes that while the inventor proposed to substitute rectified current for that originally supplied by both batteries, the development of the so-called AC tube now permits the use of alternating current for the A supply. Since the defendant's receiver employs the AC tube, no issue of infringement is here presented with respect to transformation of the A current supply in the defendant's apparatus. The controlling question upon the issue of infringement is whether the defendant employs the inventor's combination of elements in rectification of its supply of B current.

Claims 1, 2, and 3 of the patent are in suit and are printed in the margin.[1] Since claim 1 is the most specific, an analysis of it will contribute to an understanding of Edelman's organization of elements. It includes (1) a radio power supply unit comprising a transformer and means to connect it to a source of alternating current, (2) a plate current supply fed by the transformer, (3) a series cascaded filter connected to the plate current supply, (4) adjustable series resistances to adjust the output potential (of the filter) and to prevent the sudden discharge of current therefrom, (5) a filament current supply fed by the source of alternating current, (6) a metallic container for inclosing plate and filament current supplies and grounded to one of the supplies.

[1] "1. A radio power supply unit comprising a transformer, means to connect said transformer to a source of alternating current, a plate current supply fed by said transformer, a series cascaded filter connected to said plate current supply and including adjustable series resistances to adjust the output potential thereof and to prevent the sudden discharge of current therefrom, a filament current supply fed by said source of alternating current, and a metallic container for enclosing said plate and filament current supplies and grounded to one of said supplies.

"2. In a radio power supply unit, the combination of a transformer, filament and plate current supplies energized from said transformer, and means for suppressing magnetic lines of force extending from said transformer and associated apparatus, comprising a metallic container for enclosing said transformer and associated apparatus, said container being connected to one of the terminals of the filament current supply.

"3. In a radio power supply unit, the combination of a transformer, a rectifier connected thereto, a filter circuit operatively connected to said rectifier, said filter circuit having a plurality of output terminals, and means for reducing the potential at the terminals of said filter circuit and limiting the rate of discharge of current therefrom, comprising resistances connected between the filter circuit and one or more of the output terminals."

Concededly all of these elements were old, and in some, though not in all respects, their order and arrangement in combination were old. The complete combination is, however, said to be new. To understand the contribution of each of the several elements of the patented combination to produce the unitary result sought by the inventor, his general and more particular objectives are of utmost importance, especially in an art wherein demonstration of function is so beset with difficulty and involves the operation of forces undefined and indefinable. The generic object of the patent in suit was to provide a small compact electrical converter unit having a plurality of output circuits suited for furnishing power supply to the cathode heating and the anode to cathode circuits of radio vacuum tubes provided with means for eliminating objectionable hum in the output circuit, provided further with a grounded inclosure for the electrical elements whereby induction therefrom with respect to the ground is prevented from reaching radio apparatus to which the unit is to be connected. A more specific improvement comprised in the invention was that the storage element and the choke coils could be made smaller in size than formerly required due to the operation of the filter systems starting at source end with a much higher potential than at output end, and the invention was also said to have for its object the providing of a unit attachable to an alternating current for use in operating one to eight or more vacuum tubes as a current supply for both the filaments and the plates, and to accomplish this result with an inexpensive compact unit insulated from the main power supply.

Briefly, we construe the inventor's main objective to have been to provide a small, inexpensive power supply unit which could be attached to standard radio sets for the purpose of eliminating the B battery. Illustrative of the difficulties to be overcome in attaining this objective is the importance he attaches to the variable resistances provided. But the provision for adjustments through variable resistances was necessitated by the proposed use of the invention in connection with sets having tubes of unknown or variable characteristics, and testifying, the inventor concedes that if his power pack is to be built into a receiver in which the characteristics of the tubes are known, a fixed resistance would serve the same function as variable resistances. This is to be noted but as an aid in determining breadth of claim construction and to enable us to apprehend more clearly whether the defendant's structure responds to the usual tests of equivalency, i. e., identity of function or substantial identity of way of performing that function. Walker on Patents, § 417.

The alleged infringing apparatus is a complete radio receiver and not the small, compact, inexpensive power supply unit which the patent discloses. The challenged structure has no segregated power unit in the sense in which that term is used in the patent. The elements of the defendant's voltage supply system are scattered through the receiver and are not isolated. The required voltages are derived not from a series resistance but from a potentiometer, which has been aptly described by the expert and in the opinion below as a "voltage divider." Quite properly, perhaps, a potentiometer is also a resistance, but it is clear that it is not the series resistance described in the patent specification and included with a statement of function in the patent claims. This is made clear by the inventor, who points to the advantage of series resistances over the potentiometer in the following language:

"Further the output potential intended for plate supply to vacuum tubes of a radio set is adjustable via series resistances which do not comprise a shunt load limiting the output when a rectifier of small milliamperage output is used in the power unit, and do not cause the loss and voltage drop that a shunt potentiometer type of load regulator would."

The differentiation of function between the potentiometer and series resistances is further clarified by the discussions in the patent office disclosed by the file wrapper. We are not here concerned with any claim of estoppel, but when the inventor specifically disclaims some element, we think he may not recapture it by asserting that that which he has rejected is equivalent to that which he has included as of more advantage to his specific combination, Columbia Motor Car Co. v. C. A. Duerr & Co. (Selden Patent Case), 184 F. 893 (C.C.A.2); Firestone Tire & Rubber Co. v. United States Rubber Co., 79 F.(2d) 948, 960 (C.C.A.6), and in respect to patent office discussions it must be noted here, as in the Firestone Case, that the inventor was his own solicitor, so that no mis-

understanding between inventor and counsel as to the true nature and breadth of his invention may now be urged. It was said in Directoplate Corp. v. Donaldson Lithographing Co., 51 F.(2d) 199, 202 (C. C.A.6), that when an inventor voluntarily limits himself to a specific construction of clearly defined elements, all pertaining to the inventive step, as he then understands it, his own appraisal of the nature of his invention is of great importance. In place of the rejected potentiometer Edelman employs rheostats to regulate current and voltage. Whatever advantages he conceived these to contribute are not availed of by the defendant.

Edelman put all conductors carrying alternating or unfiltered direct current in an entirely separate metallic container, which was grounded to eliminate the hum in the receiver caused by the electrostatic and electromagnetic fields set up by such conductors. The assailed structure has no such single metallic container. It is true that some of its power supplying elements are separately and partially inclosed by metallic shields, but others are not. The presence of hum currents in the defendant's organization was recognized and expected. They were neutralized by various expedients which Edelman neither discloses nor claims, and which are not the equivalent of his single metal container. As has already been indicated, the development of the AC tubes, which permit use of alternating current for the A supply, has removed from the case any issue with respect to equivalents of elements in the patented combination furnishing filament current supply.

■ If it be granted that the defendant attains the same result as that achieved by the inventor, and that the latter's inventive concept was the more significant one to the art, that of achieving smooth, rectified current without pulsation rather than the less important thought of combining elements contributing to that end in small compact compass for the specific purpose he discloses, nevertheless the result itself is not patentable, and invention lies only in the specific means contrived to attain it, for no one may preclude others from reaching a beneficial result if the means are different. Wessel v. United Mattress Machinery Co., 139 F. 11, 15 (C.C.A.6); Directoplate Corp. v. Donaldson Lithographing Co., supra. We are convinced upon a careful consideration of the record that.

whatever be the result achieved by the defendant, it has not been attained by employing the same specific means disclosed by the inventor, and that there is no infringement.

The decree below will be affirmed.